IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

XAVIER CANALES,

        Plaintiff,                           Civil No. 3:10-CV-1200-HZ

     v.

MICHAEL J. ASTRUE,                         OPINION & ORDER
Commissioner of Social Security,

        Defendant.

Merrill Schneider
SCHNEIDER LAW OFFICES
P.O. Box 14490
Portland, Oregon 97293

     Attorney for Plaintiff

Dwight C. Holton
UNITED STATES ATTORNEY
District of Oregon

/ / /

1 - OPINION & ORDER

Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon97204-2902

Lisa Goldoftas
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

HERNANDEZ, District Judge:

Plaintiff Xavier Canales brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). I reverse the Commissioner's decision and remand for a determination of benefits.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on December 31, 2007, alleging an onset date of December 1, 2004. Tr. 186-92. His application was denied initially and on reconsideration. Tr. 102-03, 104-05.

On September 28, 2009, plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 46-95. At the end of the hearing, the ALJ determined that she would conduct a supplemental hearing following receipt of plaintiff's educational records. Tr. 80-81. Plaintiff appeared with counsel for the supplemental hearing on December 23, 2009. Tr. 23-45. On January 21, 2010, the ALJ found plaintiff not disabled. Tr. 6-27. The Appeals Council denied review. Tr. 1-5.

FACTUAL BACKGROUND

Plaintiff alleges disability based on chronic right foot pain and a learning disorder. Tr. 11, 227. At the time of the first hearing, he was thirty-one years old. Tr. 29. He did not complete high school and does not have a General Equivalence Diploma (GED). Tr. 57-58. He thinks he completed eleventh grade. Tr. 58. The vocational expert (VE) characterized his past relevant work experience, which consisted of working in his parents' restaurant, as stock clerk, cleaner, and order clerk/food and beverage. Tr. 41. Because the parties are familiar with the medical and other evidence of record, I refer to any additional relevant facts necessary to my decision in the discussion section below.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the

claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 11. Next, at steps two and three, the ALJ determined that plaintiff has severe impairments of Type II diabetes, obesity, chronic right foot pain, and anxiety, but that the impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 11-13.

At step four, the ALJ concluded that plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional

limitations: he requires a sit/stand option once per hour, he cannot walk more than three or four blocks without being able to sit for a couple of minutes, and he is limited to jobs involving one- to three-step tasks with only occasional changes in the work setting, only occasional need for decision-making, and only occasional contact with the public and coworkers. Tr. 13. With this RFC, the ALJ determined that plaintiff was unable to perform any of his past relevant work. Tr. 16. However, at step five, the ALJ determined that plaintiff was able to perform jobs that exist in significant numbers in the economy such as kitchen helper and laundry worker. Tr. 17. Thus, the ALJ determined that plaintiff was not disabled. Id.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation omitted).

/ / /

DISCUSSION

In his Opening Memorandum, plaintiff raises four alleged errors by the ALJ and argues that the case should be reversed and remanded for an award of benefits. The alleged errors are: (1) failure to find that plaintiff's cognitive and learning disorders were medically determinable impairments at step two; (2) finding that plaintiff did not meet or medically equal any of the listed impairments at step three; (3) issuing a vague RFC which does not properly establish whether plaintiff can perform medium, light, or sedentary work; and (4) failure to give a specific, germane reason for rejecting the third-party lay testimony of David Norlin.

In response, defendant concedes that the ALJ erred and agrees that the error requires reversal. However, defendant contends that the reversal should be for additional proceedings, not for an award of benefits. The dispute is grounded in whether the record establishes that plaintiff's impairments meet or equal a listed impairment.

I. Standards for Reversing for Additional Proceedings Versus an Award of Benefits

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "'(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a

determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.'" Harman, 211 F.3d at 1178 (quoting Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision.  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)); Nguyen v. Chater, 100 F.3d 1462, 1466-67 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 348 (9th Cir. 1991).

II.  The ALJ's Error

In her decision, the ALJ acknowledged that plaintiff alleged a learning disorder.  Tr. 11. The ALJ discussed the psychological evaluation performed in February - April 2008, by John Adler, Ph.D. Id. (citing Tr. 314-19).  Dr. Adler met with plaintiff three times and his evaluation was based on his initial interview, consultation with a third-party who came to two of the three office visits, consultation with plaintiff's then-counselor, completion of a behavior rating form, and formal testing in Dr. Adler's office, including the Wechsler Intelligence and Achievement Tests (WAIS-III and WIAT-II).  Tr. 317.

Dr. Adler's impression from the initial interview and plaintiff's history was that plaintiff may have some delays in understanding and other cognitive skills as well as some anxiety and restlessness.  Id.  Then, based on all of the data, Dr. Adler's impression was that plaintiff had "severe delays in cognitive skills (falls in mildly-retarded range)."  Tr. 318.  Dr. Adler explained:

> The test results were consistent with other information (history), and were very
> consistent across many different types of skills and tests, where he usually scores
> in the bottom percentiles, suggesting significant problems with verbal and non-

7 - OPINION & ORDER

verbal skills, calculation, problem-solving social situations, memory and concentration, along with reading and writing. Though there were also some signs of anxiety and ADHD signs, the ADHD was not as obvious as was the evidence for low skill level overall.

Id.

Dr. Adler noted that plaintiff might benefit from repetition and hands-on experiences, meaning if he were at a job, someone would have to show plaintiff what to do instead of telling him. Id. He also remarked that plaintiff reported doing fairly well at his past restaurant job, where he performed various tasks for more than twelve years, including as a cashier, which Dr. Adler found "surprising[.]" Id. According to Dr. Adler, plaintiff's work history suggested that "a positive outlook is possible." Id.

On the WAIS-III intelligence tests, plaintiff's verbal score was 68, and his performance and full scores were 63, which were in the first or second percentiles. Tr. 319. His scores on the WIAT-II were 62 in word reading, 53 in reading comprehension, 62 in pseudoword decoding, 68 in math, and 66 in spelling. Id. These scores ranged from the 0.1 percentile to the second percentile. Id.

The ALJ specifically referred to Dr. Adler's finding that plaintiff had cognitive difficulties, but the ALJ nonetheless concluded that there was not sufficient evidence to establish a medically determinable learning disorder or other cognitive disorder. Tr. 12. The ALJ based her conclusion on Dr. Adler having noted that plaintiff showed some inconsistencies and uneven responses in the IQ testing and that his scores were not consistent with his history of work as a cook and a cashier. Tr. 11. The ALJ also found that plaintiff's school records showed "decent" grades and achievement in reading in his early school years, and that his subsequent problems in

later years were attributable to lack of attendance, not turning in assignments, and disciplinary issues. Tr. 12. She noted that none of the school records referred to a learning disability or cognitive disorder. Id.

Plaintiff argues in his Opening Memorandum that the ALJ misrepresented Dr. Adler's report and did not adequately summarize plaintiff's educational records. As plaintiff notes, contrary to the ALJ's finding, Dr. Adler did not state that the testing showed inconsistencies and uneven responses. In fact, Dr. Adler said the opposite: "the test results were consistent with other information (history), and were very consistent across many different types of skills, . . . ." Tr. 318. The ALJ did not actually cite to Dr. Adler's report in support of her conclusion. She cited instead to notes made by non-examining Disability Determination Services (DDS) psychologist Peter LeBray, Ph.D, on April 24, 2008, after Dr. LeBray spoke to Dr. Adler on the telephone. Tr. 422. Dr. LeBray wrote that Dr. Adler believed that plaintiff showed some inconsistencies and uneven responses on testing. Id. However, Dr. Adler's report contains directly contrary information. Given the contradiction, Dr. LeBray's note as to what Dr. Adler may have said is not substantial evidence.

Additionally, the ALJ found that Dr. Adler reported that plaintiff's scores were inconsistent with plaintiff's work as a cook and a cashier. Again, Dr. Adler's report states that plaintiff's scores were consistent with his history. Dr. Adler noted only his surprise that plaintiff had worked as a cashier, and, the record makes no mention of plaintiff having worked as a cook. Further, as plaintiff explained at the hearing, plaintiff worked at his family's restaurant, under direct supervision of his father, and failed at his attempt to work as a cashier.

The school records show that plaintiff was placed on an Individual Education Plan (IEP)

9 - OPINION & ORDER

in first grade because of problems in reading and math. Tr. 398-400; see also Tr. 377 (showing plaintiff still on an IEP in junior high in June 1991). He did achieve "decent" grades in fifth grade, earning some As and Bs in special education classes. Tr. 386. When placed back in regular classes in sixth grade, he received Cs in reading, language, and spelling, and an F in math. Tr. 382. He appears to have been in several classes designated "RSP," which is not defined in the documents but appears to also refer to special education classes. See Tr. 33 (VE testified at the hearing that she understood the term to mean "Resource Specialist Programs" which fell under Special Education programs); Tr. 377 (noting that plaintiff struggled in a regular English class and that RSP seemed to be the best placement).

    Plaintiff testified that when he moved to Portland from California, he did not report his history of special education classes to his new high school because he had been made fun of in California for being in those classes. Tr. 59, 73. He failed the majority of his high school classes and appears to have been placed in special classes noted as "RES" on his report cards. Tr. 378-408.

    In his Opening Memorandum, plaintiff also argues that his learning disorder/cognitive impairment has been established by acceptable clinical diagnostic techniques and diagnosed by an acceptable source. In addition to Dr. Adler's conclusion, plaintiff notes that DDS non-examining psychologist Robert Henry, Ph.D., concluded that plaintiff suffered from borderline intellectual functioning. Tr. 331.

    In the face of these arguments, defendant concedes that the ALJ erred by rejecting Dr. Adler's opinion that plaintiff had a severe cognitive impairment. Deft's Brief at p. 6. Nonetheless, defendant contends that a remand for additional proceedings is required.

10 - OPINION & ORDER

III. Listing 12.05C

Plaintiff contends that when Dr. Adler's report is properly credited, substantial evidence in the record supports a conclusion that plaintiff meets Listing 12.05C. Listing 12.05C, governing mental retardation, provides that:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R., Pt. 404, Subpt P, App. 1, 12.05.

Defendant argues that notwithstanding Dr. Adler's report, the opinion of a medical expert is needed to clarify the nature and severity of plaintiff's impairments as well as the alleged onset date. The only evidence in the record cited by defendant in an effort to argue that a medical expert is required to clarify plaintiff's mental impairment is the July 30, 2008 report completed by non-examining DDS psychologist Dr. Henry. There, Dr. Henry states that Dr. Adler commented that plaintiff's IQ scores were inconsistent with plaintiff's ability to live alone and with his work history of being a cashier. Tr. 342. But, as noted above, Dr. Adler explained that plaintiff's test scores were consistent with other information such as plaintiff's history and across different types of skills and tests. Tr. 318. There is no basis for Dr. Henry's statement that Dr. Adler commented that plaintiff's IQ scores were inconsistent with anything. While Dr. Adler indicated

11 - OPINION & ORDER

that plaintiff's having worked as a cashier was surprising, the record shows that plaintiff attempted to work as a cashier at his parents' restaurant, but failed in this attempt. Tr. 37. It is clear that while Dr. Adler correctly noted that plaintiff had worked at various tasks in the restaurant for twelve years, he did not possess complete information about plaintiff's limited experience actually operating the cash register.

      Dr. Henry also indicated that plaintiff's having custody of two of his children was not consistent with mental retardation, and that plaintiff had not told Dr. Adler of his prior use of methamphetamine. How plaintiff's failure to mention a prior drug habit, since resolved, affects the validity of Dr. Adler's testing is unclear. As for the custody of his children, plaintiff testified at the hearing that for a time, he had custody of one of his children when the mother of the child, with whom he had two children, dropped the child off with plaintiff at plaintiff's aunt's house. Tr. 77. Both his aunt and plaintiff's girlfriend at the time helped him take care of the child. Id. At the time of the first hearing in September 2009, plaintiff had been living with his parents for more than one year. Id.

      Dr. Henry's notes, which do not accurately represent the evidence in the record, do not undermine Dr. Adler's report or create a question of ambiguity regarding plaintiff's WAIS-II or WAIT-II test scores. These scores place plaintiff in the range of paragraph "C" of Listing 12.05.

      Defendant contends that the record is unclear nonetheless as to the onset of plaintiff's mental and physical limitations. As to the mental limitations, plaintiff's school records establish that he was on an IEP beginning in first grade and cycled in and out of special education classes for all the years he attended school. While occasionally obtaining a passing grade, or better, overall, the majority of his courses in junior high and high school resulted in a failing grade. As

12 - OPINION & ORDER

noted, he never graduated or obtained a GED.

> A showing of early onset for purposes of Listing 12.05C does not require clinical or IQ tests. . . . A claimant may use circumstantial evidence to demonstrate adaptive functioning deficits, such as attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history. . . . .

Pedro v. Astrue, No. CV-10–6047–MA, 2011 WL 1100214, at *5 (D. Or. Mar. 23, 2011) (citations omitted); see also Maresh v. Barnhart, 438 F.3d 897, 900 (8th Cir. 2006) (absent evidence to the contrary, individual's IQ presumed to remain stable over time); Phelps v. Commissioner, No. CV-04-1657-PK, Findings & Rec. at p. 12 (D. Or. Dec. 20, 2006) (for purposes of Listing 12.05C, record established impairment began before age 22 when claimant consistently reported and testified that school was difficult for her and that she struggled with reading, memory and spelling), adopted by Judge King (D. Or. Jan. 8, 2007). The evidence sufficiently establishes that plaintiff's cognitive impairment began before age 22.

Listing 12.05C also requires that plaintiff have a physical or other mental impairment imposing an additional and significant work-related limitation of function. The ALJ found that plaintiff suffered from the following severe impairments: Type II diabetes, obesity, chronic foot pain, and anxiety. Tr. 11. In his RFC, the ALJ imposed functional limitations related to plaintiff's impairments including a sit/stand option, an inability to walk more than three to four blocks without being able to sit for a couple of minutes, and only occasional contact with the public and co-workers. Tr. 13.

Defendant contends that plaintiff fails to establish that the impairments existed on or before his date of last insured, June 30, 2006, a necessary requirement for plaintiff's DIB claim. 42 U.S.C. § 416(i)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Defendant requests

that the case be remanded to allow for a medical expert to establish the onset date of plaintiff's impairments.

First, I note that at least as to plaintiff's SSI claim, the onset date issue is irrelevant because plaintiff is not required to establish disability before the date of last insured under Title XVI. Defendant concedes this point. Deft's Brief at p. 8. Thus, plaintiff has established that he meets the requirements of Listing 12.05C in regard to his SSI claim and reversing for a determination of an award of SSI benefits is appropriate.

Second, as to the DIB claim, I agree with defendant that the record shows that plaintiff's diabetes was not diagnosed until approximately February 2008. Tr. 363. Additionally, the record is unclear regarding the inception of plaintiff's anxiety. And, while plaintiff appears to have suffered from obesity for several years, the record does not establish an onset date, nor is it clear that the ALJ's functional limitations in the RFC are related to his obesity.

There are, however, medical records supporting plaintiff's allegations that his foot pain began in 2004. In December 2004, plaintiff experienced an infection and abscess in his right foot which required surgical irrigation and debridement. Tr. 291-301. He spent nine days in the hospital as a result of the surgery, the follow-up wound care, and the IV antibiotics required to treat him. Id.

Although the next medical records are from 2008, plaintiff reported to various practitioners at that time that his foot pain had been ongoing since the 2004 foot surgery, and that the pain was worsened by walking and standing. E.g., Tr. 309 (February 15, 2008 chart note by David C. Greenberg, D.P.M stating that "[s]ince recovery from surgery in 2004 he has persistent and sometimes significant discomfort in his right foot. He described episodes of redness and

14 - OPINION & ORDER

swelling of the foot localized about the great toe joint.  This pain is worsened [by] walking and standing. . . . He has taken frequent doses of the narcotic analgesic medication prescribed by Dr. Lewis for treatment of his right foot pain.  He has found nothing else on his own that reduces the foot pain");  Tr. 363 (March 8, 2008 report of consultative examination by John H. Ellison, M.D., noting that plaintiff said he had had pain in his right forefoot since surgery n 2004, and had right foot pain with prolonged walking or standing).

The determination of the onset date involves consideration of the claimant's allegations, work history, and the medical and other evidence concerning impairment severity.  Soc. Sec. Ruling 83-20, available at 1983 WL 31249.  Here, the medical evidence establishes a serious foot injury as of December 11, 2004.  Plaintiff's subsequent reports to physicians in early 2008 are that he experienced significant pain in the foot since that date.  He also testified in the hearing that his foot never properly healed, causing him pain to walk on it.  Tr. 54-57.  Additionally, plaintiff last worked at the restaurant in 2004.  Tr. 62.  His parents refused to hire him back after the foot injury and surgery because he had a hard time standing and there was no work he could do while sitting.  Tr. 62-63.

Based on the medical evidence, plaintiff's testimony, and his work history, there is substantial evidence in the record to support a determination that his chronic right foot pain was a severe impairment before his last insured date in 2006.  Thus, a remand for a determination of an award of benefits is appropriate because the ALJ failed to provide legally sufficient reasons for rejecting Dr. Adler's testimony, there are no outstanding issues that must be resolved before a determination of disability based on Listing 12.05C can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled under Listing 12.05C  were such

15 - OPINION & ORDER

evidence credited.

## CONCLUSION

The Commissioner's decision is reversed and remanded for a determination of benefits.

IT IS SO ORDERED.

Dated this __3rd__ day of __October__, 2011


 /s/ Marco A. Hernandez
Marco A. Hernandez
United States District Judge